## STONE ET AL. V. MILLER ET AL.

1. **Certiorari:** RETURN RESPONSIVE TO WRIT NOT STRICKEN OUT. A petition for the writ of *certiorari*, to review the action of the board of supervisors in submitting to the people the question of the removal of the county seat, prayed that the board be commanded to certify fully the facts relating to the matters stated in the petition, and the proceedings and evidence upon which an order for a vote was made; and the writ being granted as prayed, the board not only certified a transcript of their proceedings, but made a statement of the means used by them in ascertaining the genuine and fictitious signatures to the petition and remonstrance: *Held* that, although the means so used were in part illegal, yet a motion to strike this statement from the return was properly overruled.

2. **County Seat:** RELOCATION OF: PETITION FOR: AFFIDAVIT TO. One of the petitions for the relocation of the county seat had attached to it the following affidavit:

   "*State of Iowa, Delaware County:*

   "I, L. S. S., being duly sworn, on oath say, that I obtained the signatures to the foregoing petition; that said signatures are all genuine; and that the signers thereto were all legal voters of Delaware county, Iowa, at the time of signing.                                    L. S. S.

   "Subscribed in my presence and sworn to before me this 7th day of June, 1880.
   [SEAL.]                                   "A. S. B., *Notary Public.*"

   *Held:* (1.) That it was a sufficient compliance with section 282 of the Code, for the affidavit to state that the signers to the petition were legal voters at the time of *signing.* (2) That it was not necessary that the certificate to the affidavit should name the person signing and swearing. (3) That it was sufficient for the notary making the certificate simply to subscribe his name thereto, with the addition "Notary Public," without stating the state or county for which he was notary.

3. **———: ———: ———: ———:** AMENDING JURATS. Upon a review by *certiorari* of the action of the supervisors in submitting to the people the question of the relocation of the county seat, it was not error for the court to allow the jurats to some of the petitions to be amended, by adding after the name of the officer before whom oath was made, the words "justice of the peace" or "notary public," and other jurats to be amended by the addition of the name of the officer with his official title, it not being denied that the petitions were properly sworn to before the officers referred to, nor that the omissions were mere clerical errors.

4. **———: ———:** REVIEWED BY CERTIORARI: DUTY OF COURT. Upon such review, the question submitted to the court was, whether the super-

visors were authorized to submit the question of relocation to a vote; and it was error for the court simply to rely upon the satement of the supervisors made in their return, that the names of legal voters, properly counted upon the petition, exceeded in number those upon the remonstrance. The court should have examined the evidence submitted with the statement, and thereby determined the truth or falsity of the statement.

*Appeal from Delaware Circuit Court.*

TUESDAY, DECEMBER 12.

THIS is a proceeding by *certiorari* to review the action of the board of supervisors of Delaware county, in submitting to the electors of said county the question of relocating the county seat of said county at the town of Manchester. The court adjudged that the action and proceedings of the board of supervisors, in ordering a vote upon the question of the re-location of the county seat, be affirmed. The plaintiffs appeal. The facts are stated in the opinion.

*J. M. Brayton* and *I. N. Sullivan*, for appellants.

*Shiras, Van Duzee & Henderson, C. Yoran* and *A. S. Blair*, for appellees.

DAY, J.—I. The petition prays that a *writ of certiorari* may be granted, commanding the board of supervisors to certify fully to the Circuit Court a transcript of the record and proceedings of said board, as well as the facts relating to the matter stated in the petition, and the proceedings and evidence upon which said order for said vote was made. The judge, upon the presentation of the petition, ordered that a *writ of certiorari* be granted as prayed. And the writ itself commands the board to certify and return a full, complete and perfect transcript of all the matters called for by the petition and the order of the judge. In return to this writ, the board caused to be certified to the Circuit Court the petitions and remonstrances submitted, and a complete trans-

cript of all the proceedings had before them during the pendency of, and pertaining to, the matter in question.

This transcript shows that, when the board acted upon the matter and ordered the vote, they found the following facts to exist respecting the petitions and remonstrances:

The whole number of votes under the last preceding census . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,662

The number of names appearing on the petition . . 2,684

The number of names on both petition and remonstrance, to be counted off of petition . . . . . . . . . . 500

Duplicates on petition . . . . . . . . . . . . . . . . . . . . . . . . 14

Number taken from petition by affidavit affecting both petition and remonstrance . . . . . . . . . . . . . . 15

Number of names taken from petition . . . . . . . . . . · 8

Number of aliens counted off petition . . . . . . . . . . 4

Number counted off by affidavit of remonstrance . 7

Total number counted off from petition . . . . . . . . 548

Total number to be counted on petition . . . . . . . . 2,136

Number of names on remonstrance . . . . . . . . . . . 2,250

Number of duplicates counted off . . . . . . . . . . . . . 44

Number of minors counted off . . . . . . . . . . . . . . . 13

Number of names counted off by affidavit of petitioners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111

Total number counted off . . . . . . . . . . . . . . . . . . . 168

Total number counted on remonstrance . . . . . . . . 2,082

Majority for petitioners . . . . . : . . . . . . . . . . . . . . . 54

After the writ was served upon the board they convened and ordered that, amongst other things, the following be certified as a part of their return: "We further certify the fact to be that in striking off the 500 names from the petition, as shown by the copy of record hereto attached, we acted, first, on comparison of signatures, viz: while acting as a committee as aforesaid, we compared names and signatures on both petition and remonstrance, and when we were satisfied that the signatures were alike, by thus comparing, we made a list of such names, and they numbered 351, which we agreed

should be stricken off from petition and remonstrance (we were furnished by remonstrators with a list of names which it was claimed by them were signatures of same persons on both petition and remonstrances). We next took the balance of names on such list, and which names were similar in initials, and the signatures of which we were not satisfied by comparison were made by the same person, and resorted to extrinsic evidence, such as poll-books, to see if other men by same name had ever voted in that township; the military list in assessor's books; the alien records, to see if two men by the same name had been naturalized; and the comparison of signatures by others not members of the board, and inquiries of parties outside, and not being fully satisfied ourselves that the same persons both petitioned and remonstrated, but by the aid of this outside and extrinsic evidence, resolved the doubt in favor of the remonstrance; and we further say that by this method we struck off from petition, as being on the remonstrance, in all 500 names; and we further say that without this extrinsic evidence, we would not and could not have stricken off from petition, as being on the remonstrance, but 351 names; and we further say that a re-canvas of said names, excluding all extrinsic evidence, but acting on the petition and affidavits annexed, and the remonstrance and affidavits annexed, and the comparison of signatures, we, in order to be satisfied that the same person both petitioned and remonstrated, will be compelled to find that the number of legal voters petitioning for a re-location of county seat, exceeds the number of legal voters remonstrating against a removal by 113 names, and would, therefore, be compelled to order a call as we did; we further say that duplicates were stricken off by a comparison of signatures, and the minors by extrinsic evidence. The result of re-canvass will be as follows:

Whole number on petition......................2,684

Duplicates counted off by comparison of signatures.　14

Names counted off as being on remonstrance from

　a comparison of signatures................... 351

Total counted off from petition................ 365

Total nnmber to be counted on petition..........2,319

Whole number names on the remonstrance.......2,250

Duplicates counted off by a comparison of signa-
tures................................... 44

Total on remonstrance........................2,206

Number on petition exceeding that on remonstrance 113

The above tabulation is without the use of our personal knowledge, by the use of which, viz: personal knowledge of names to both petition and remonstrance, that they were not voters when petition and remonstrance were presented to us, the change will be as follows:

Number to be stricken from petition............ 380

To be stricken from remonstrance.............. 80

Number on petition after all deductions.........2,304

Number on remonstrance......................2,170

Petition exceeds remonstrance................. 134

We further say that without the use of our personal knowledge, or any extrinsic evidence or comparison of signatures, the petition will exceed the remonstrance by 434."

The plaintiff moved the court to strike from the return everything except a transcript of the proceedings of the board **1. CERTIO-** up to the time that the order for the submission **RARI: return responsive to** to a vote was made. The court overruled this **writ not stricken out.** motion, and this action is assigned as error. At the time of the submissison of the question to the board of supervisors, both parties seemed to have thought that it was competent to assail the competency of the signers of the petition and remonstrance by affidavits. Hence, affidavits were submitted upon both sides, and the board, acting upon them, counted off 22 names from the petition and 111 from the remonstrance. That this action was erroneous under the doctrine of *Herrick v. Carpenter*, 54 Iowa, 340, is now conceded; still the order of the board calling an election ought not to be set aside if the number of names legally on the petition in fact exceeded those on the remonstrance. The real question is, did the board act illegally in calling an election?

If the number of petitioners was sufficient to justify the

Stone v. Miller.

order of the board calling an election, their order must be sustained, notwithstanding the fact that they may have erred in the manner of ascertaining the number properly on the petition and remonstrance. The petition for the writ of *certiorari* prays that the board may be commanded to certify fully the facts relating to the matters stated in the petition, and the proceedings and evidence upon which an order for a vote was made. The matter in question simply shows upon what evidence the board proceeded, and in what manner they reached the result upon which the order was based. In our opinion, the court did not err in refusing to strike this matter from the return.

II. The petition consisted of 185 distinct petitions, to

2. COUNTY seat: re-location of : petition for : affidavit to.

each of which was attached the affidavit of the person who procured the signatures. The affidavit to petition number one, is as follows:

" I, L. S. Sherwin, being duly sworn, on oath say, that I obtained the signatures to the foregoing petition, that said signatures are all genuine, and that the signers thereto were all legal voters of Delaware county, Iowa, at the time of signing.                                     L. S. SHERWIN.

" Subscribed in my presence, and sworn to before me, this 7th day of June, 1880.

[SEAL]              .          A. S. BLAIR, *Notary Public.*

1. It is objected that this affidavit does not comply with the requirements of section 282 of the Code, because it states that the signers were all legal voters of Delaware county, at the time of signing. It is insisted that the affidavit should state that the signers *are*, at the time of making the affidavit, legal voters. We think, however, that it is a compliance with the statute to show by affidavit that the signers were legal voters at the time of signing.

2. It is further objected that the certificate to the affidavit does not name the person signing or swearing. Section 2913 of the Revision, respecting the verification of pleadings, required that the officer "shall certify that it was signed

in his presence by the person (naming him), and by him, before such officer, sworn to or affirmed." This provision, however, applied only to the verification of pleadings, and it was not incorporated into the Code of 1873. We know of no statute or rule of law which requires that this certificate should be held insufficient.

3. It is further objected that the notary signing the certificates simply attached his name with the addition, "Notary Public," without stating the State or county for which he was notary. Appellant relies upon *Tunis v. Withrow*, 10 Iowa, 305, and *Willard v. Cramer*, 36 Id., 22. In *Tunis v. Withrow*, one of the affidavits in question was not evidenced by the seal of the notary, and the other had neither the seal nor the signature. These facts clearly distinguish that case from the one at bar. In *Willard v. Cramer*, the paper in question was a certificate of acknowledgment. The decision was based upon the express provision of the Revision, sections 2201, 2227, requiring the certificate of acknowledgment to set forth the title of the court or person before whom the acknowledgment was taken. There is no similar provision as to the certificate to an affidavit. The affidavits are all headed "State of Iowa, Delaware county," and the signatures of the notaries are authenticated with a seal. The objection under consideration to the jurats in question, is, we think, without merit.

III. The jurat to the affidavit to one of the petitions was signed "J. H. Fuller," another was signed "Chas. E. Bronson," and two were without signature. These four petitions were filed on the 7th day of June, and contained in all 67 names. On the 17th of June, when the board came to act upon the matter, they gave permission to amend the jurats by writing after the name "J. H. Fuller," the words "Just. Peace," and after the name "Chas. E. Bronson" the words "Notary Public," and after the other two jurats the words "A. S. Blair, Notary Public." The appellant assigns this action of the court as error. Leave to

*3. —: —: amending jurats.*

make these amendments was asked upon the ground that the omission was a mistake and clerical error. It is not claimed but that the affidavits were properly sworn to before the persons referred to. It was clearly competent, we think, for the board to allow the jurats to be perfected. After leave was granted to petitioners to correct the petitions in the manner above indicated, the remonstrants asked and obtained permission to amend in like manner the jurats to three of their affidavits.

IV. The board of supervisors certified to the court the originals of the petitions and remonstrances, together with the statement that, without the aid of extrinsic evidence, they were able to find only 351 names on both the petition and remonstrance. The appellant insists that there are 623 names upon the petition which are also upon the remonstrance. If 623 names be stricken from the petition, the remainder would not equal the number of names on the remonstrance, and would not authorize the board of supervisors to order a vote. Whether the board were, or were not, authorized to submit the question to vote, is the question which was submitted for determination to the court below by this proceeding. The bill of exceptions recited that "the court, although requested so to do by plaintiffs, did not examine, or cause to be examined, the petition or remonstrances, to ascertain how many names of persons who signed the remonstrances were also upon said petition, and thereby determine whether the said petition had the majority." The court seems to have relied simply upon the statement of the defendants made to their return, and to have ignored altogether the evidence sent up with their return, whereby the truth or falsity of their statement might have been determined. It was the duty of the court to examine the evidence submitted, and determine whether it showed that the signatures properly on the petition were a majority of all the names submitted. In refusing to make this examination the court erred. The case of *Baker v. Board of Supervisors*, 40

*4. ——: ——:*
*review by*
*certiorari:*
*duty of court.*

Iowa, 226, relied upon by appellees, is not in point. That was an application for an injunction to restrain further proceedings in the matter of submission.

REVERSED.